GRAHAM ET AL. v. MERCEREAU HAWKINS TIE
COMPANY.

[No. 11,448. Filed May 16, 1923. Rehearing denied October 12,
1923. Transfer denied April 8, 1924.]

1. SALES.—*Quality of Goods Purchased.—Previous Orders.*—
Where defendants purchased from plaintiff certain railroad
"tie siding" which was to grade "No. 2 common and better,
65 per cent. being No. 1 common," and subsequently purchased
"five more cars * * * of this material," evidence *held* to
require a finding that the additional material purchased was
to be of same grade as that previously purchased. p. 373.
2. CONTRACTS.—*Construction.—By Parties.—When Controls.*—
The construction placed on a contract by the parties them-
selves may be considered where the contract is ambiguous.
p. 376.

From Johnson Circuit Court; *Fremont Miller,* Judge.

Action by Mercereau Hawkins Tie Company against
John W. Graham and another. From a judgment for
plaintiff, the defendants appeal. *Reversed.*

*Walter L. Neible, George I. White* and *Fred R. Owens,*
for appellants.

*Paul W. Scott, William M. Pruit* and *William E. Deu-
pree,* for appellee.

BATMAN, J.—On October 13, 1919, appellee wrote to
appellants as follows: "We have yours of the 9th ask-
ing for prices on No. 2 common and better oak tie
siding. In reply to same will say that we can furnish
you several cars of this stock for $53 delivered, with
a guarantee that none of the cars will run lower than
65 per cent No. 1 common and 1s and 2s."

On October 18, 1919, appellants wrote the following
to appellee: "Answering your letter of October 13th,
will say that you may enter our order for 150,000 ft.
of the No. 2 common and better tie siding at $53 per
thousand delivered Edinburg, and we note you guaran-
tee that this stock will not run lower than 65 per cent

No. 1 common and 1s and 2s. We understand this lumber is nicely manufactured and dry."

On January 10, 1920, while shipments were being made on the above order, appellants made the following inquiry of appellee by letter: "Have you any more of this material to offer at present, and if so at what price?" On January 16, 1920, appellee wrote appellants the following response: "We could furnish you additional stock, say five cars, to be delivered as we get the cars, for $90 per M. * * * If you care to place an additional order at the above price, let us know at once, and we will see that you are taken care of." On January 30, 1920, appellants, in an answer to said last named letter, made the following statement: "We note that you have about five cars of additional stock of the No. 2 common and better tie siding, which you could furnish us at this time at $90 per M." This statement was followed by an outline of a proposed plan for combining their old order, on which appellee was still making shipments, with their proposed new order for five additional cars, and a concluding statement reading as follows: "Kindly advise us at once what you think of this proposition, and we will send you our formal order by return mail." On February 2, 1920, appellee made response by letter as follows: "We have your letter of January 30th. We invoiced to you this morning one car of tie siding which will apply on your old order, and we are entering your order for five more cars at $90 per M delivered. * * *" On February 4, 1920, appellants sent appellee the following order: "Please furnish the following: Ship via freight. When, as before. Terms, as before, F. O. B. Edinburg. Quantity, 5 cars. Description 4-4 inch No. 2 common and better dry oak tie siding. Price $90. This is in accordance with our letter of January 30th and your reply of February 2, 1920. * * *" Appellee

shipped one car on said last named order, which was not accepted because of its grade and condition, until an adjustment had been made.   Thereafter appellee shipped the remaining four cars of said order, but appellants refused to accept the same because of the grade and condition of the siding.   On appellee's request, appellants unloaded said cars, and held the siding subject to the former's orders.   Afterwards appellee instituted this action to recover for said four cars of siding by filing a complaint in two paragraphs.   The first is based on an account for merchandise received by appellants from appellee, and the second is based on said order of February 4, 1920.   Appellants filed an answer in two paragraphs, and also counterclaim against appellee. The first paragraph of answer is a general denial, and the second, after an admission that appellants had placed with appellee the order in suit, alleges that its full terms and conditions were to be found in the letters set out above; that the grade and condition of the siding in question was not in conformity with their said contract, and for that reason they refused to accept the same.   Issues having been joined on said counterclaim and said second paragraph of answer by the filing of general denials, the cause was submitted to a jury for trial, resulting in a verdict and judgment in favor of appellee.   Appellants filed a motion for a new trial, which was overruled, and this action of the court constitutes the only error assigned on appeal.

Appellants contend that if the verdict rests on the first paragraph of the complaint, it is not sustained by the evidence, as there is no proof that they ac-

1.   cepted the siding in question, and that if it rests on the second paragraph, it is not sustained by the evidence, as there is no proof that the siding was of the grade, and in the condition, specified in the contract under which it was shipped.   We sustain appel-

lants' contention as to the first paragraph of the complaint, and will now direct our attention to said second paragraph.

Appellants contend that the contract under which said siding was shipped provides that it should be dry oak, No. 2 common and better, *sixty-five per cent. being No. 1 common,* while appellee contends that the contract provides that the siding should be merely dry oak, No. 2 common and better. A determination of these opposing contentions will be decisive of this appeal. It will be observed that the order of February 4, 1920, is not complete within itself, as it provides that the time and terms of shipment were to be as before, thus indicating that they were to be the same as in their former agreement in that regard, and also expressly provides, that the order "is in accordance with our (appellants') letter of January 30th, and your (appellee's) reply of February 2, 1920." This requires us to examine the letters mentioned, and any other communications between the parties to which reference is made therein, in order to ascertain the full terms of the contract of which said order forms a part. We observe that said letter of January 30 was written by appellants in answer to one received from appellee dated January 16, both in 1920, in which the latter had stated that it could furnish the former "additional stock, say five cars, * * * for $90 per M."; and that this quotation was made in response to a letter received from appellants, dated January 10, 1920, which, after referring to an existing order between them, dated October 18, 1919, (by which appellee had agreed to ship appellants 150,000 ft. of dry oak siding, which would grade No. 2 common and better, *sixty-five per cent. being No. 1 common*) concluded with the following inquiry: "Have you *any more of this material* to offer at present, and if so, at what price?" (Our italics.) Returning now to said

letter of January 30, it will be observed that appellants stated: "We note that you have about five cars of *additional stock of the No. 2 common and better tie siding,* which you could furnish us at this time at $90 per M. (Here follows proposed plan for combining old and new orders.) Kindly advise us what you think of this proposition, and we will send you our formal order by return mail." (Our italics.) It will also be observed that in said letter of February 2, 1920, appellee stated: "We invoiced to you this morning one car of tie siding, which will apply on your old order, and we are entering your order for *five more cars* at $90 per M. delivered." (Our italics.) With this uncontradicted evidence before us, we are forced to conclude that when appellants placed the order with appellee, bearing date of February 4, 1920, which was done in accordance with the two letters mentioned therein, and the same was accepted by the latter, the parties understood that sixty-five per cent. of the siding mentioned therein as No. 2 common and better, was to grade No. 1 common. In reaching this conclusion, we have been influenced by the fact that appellee, on October 13, 1919, in quoting a price on No. 2 common and better oak tie siding, fixed the grade thereof at sixty-five per cent. No. 1 common, and that the evidence fails to disclose that there was ever any withdrawal or modification of this specification of quality; that during the shipment of the order dated October 18, 1919, which required a shipment of the grade specified as sixty-five per cent. No. 1 common, appellants inquired if appellee had *any more of this material,* and was informed that it could furnish them five cars of *additional stock;* that appellants answered, noting that appellee had about five cars of *additional stock* of the No. 2 common and better siding, and that appellee entered appellants' order for *five more cars;* and that all of this preceded the order

of February 4, 1920, which was made in accordance with the letters mentioned, as expressly stated. We consider these facts significant, as it seems clear to us that when appellants were receiving from appellee siding of a specified grade, pursuant to an existing contract, and they asked if they had *any more of this material,* and its present price, and were given an increased price, without any reference to a change in grade, and both parties referred to it as *additional stock,* and appellee entered the order as *more cars,* which was followed two days later by a formal order, which was incomplete within itself, but clearly embodied former correspondence of the nature indicated, that it must all be considered as a whole in determining the true intent of the parties.

We are confirmed in the conclusion we have announced by the practical construction placed on the contract by the parties themselves, which we are authorized to consider under the circumstances presented in this case. *Board, etc.,* v. *Gibson* (1902), 158 Ind. 471; *Kann* v. *Brooks* (1913), 54 Ind. App. 625. It will be observed that when the first of the five cars embraced in the last contract arrived, appellants claimed that the siding therein was green, and of a grade inferior to that ordered. They communicated these facts to appellee by letters, dated March 23 and 25, 1920, in the last of which, after giving the number of feet of each grade, appears the following: "You guaranteed this lumber to run 65 per cent. No. 1 common and better, and the other cars which we have received from you up to this time have run practically as you said they would, but you will note this one is away off."

In response to these letters, appellee wrote appellants, on March 29, 1920, as follows:

"We are very much surprised indeed to receive a re-

port of this kind. Wish you would please mail us your piece tally on this car, and we will then take this matter up with our inspector, who loaded this car and find out why this undergrade stock was put in this car, as all of our stock is bought to grade 65 per cent. No. 1 common and better."

Thereafter appellee wrote appellants a number of letters, prior to August 3, 1920, with reference to the siding shipped under their last contract, in some of which the grade of siding was mentioned, and also its purpose to take up the matter with its inspectors, but in none of these letters was any denial made that the siding should grade sixty-five per cent. No. 1 common, as claimed by appellants in their letter of March 25, 1920. Moreover, when a settlement was made for the siding shipped in the first car of the five, covered by the last contract, which involved an adjustment growing out of a claim made as to the grade and condition of the siding, appellee made no contention that it should not grade sixty-five per cent No. 1 common, as appellants stated in their letter last above mentioned. The first contention which appellee made to the contrary, as far as we have been able to discover, appears in their letter of August 3, 1920. The fact that appellee remained silent on the material question of the grade of the siding which appellants were to receive under their last contract, after it had received notice of the latter's claim in that regard, becomes a significant fact for our consideration in determining the construction we shall place on the same. Having reached the conclusion stated, and it not appearing that there is any evidence tending to show that the siding in question would grade sixty-five per cent. No 1 common, we sustain appellants' contention that the verdict is not sustained by the evidence, whether it rests on the first or second paragraphs of the complaint. For the reasons stated,

we hold that the court erred in overruling appellants' motion for a new trial, because the verdict is not sustained by the evidence, and because of the error of the court in refusing to direct a verdict in favor of appellants at their request, and in giving instruction No. 22, in which the jury was informed that the provision relating to sixty-five per cent. No. 1 common was not an essential part of the contract involved in this action. Other alleged errors are not considered, as they may not arise on another trial of the cause. Judgment reversed, with instructions to sustain appellants' motion for a new trial, and for further proceedings consistent with this opinion.